UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

JILL L. TERRY,

        Plaintiff,

   -against-            5:11-CV-1296 (LEK/ATB)

COUNTY OF CAYUGA,

        Defendant.

# **MEMORANDUM-DECISION and ORDER**

## I. **INTRODUCTION**

In this employment case, Plaintiff Jill L. Terry ("Plaintiff") alleges that she was terminated by Defendant County of Cayuga ("Defendant") in retaliation for taking leave pursuant to the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601-2654. See generally Dkt. No. 1 ("Complaint"). Presently before the Court are Defendant's Motion for leave to file an amended answer and Motion *in limine* to strike the Second Report of expert witness Matthew McCabe ("McCabe"). Dkt. Nos. 40 ("Motion to Amend"); 41 ("Motion *in limine*"); 41-4 ("Second Report"). For the following reasons, the Motions are denied.

## II. **BACKGROUND**

The Court presumes the parties' familiarity with the facts and history of this case, a full account of which is contained in the Court's Memorandum-Decision and Order of September 30, 2013. Dkt. No. 29 ("Order").

Plaintiff filed her Complaint in November 2011, alleging that Defendant terminated her employment in October 2010 in retaliation for taking FMLA leave. Compl. Defendant filed an Answer on December 2, 2011. Dkt. No. 9 ("Answer"). The period for amending pleadings expired

on March 30, 2012, and discovery closed on November 16, 2012.[1]  Dkt. No. 11; Aug. 23, 2012 Text Order.  On December 18, 2012, Defendant filed a Motion for summary judgment, which the Court denied in the Order.  Dkt. No. 23; Order.  A bench trial is scheduled for June 3, 2014.  Dkt. No. 36.

### A. Motion to Amend

On March 28, 2014, Defendant filed its Motion to Amend its Answer to assert an affirmative defense that after-acquired evidence of misconduct by Plaintiff limits the availability of backpay and reinstatement.  Mot. Am.; Dkt No. 40-9 ("Motion to Amend Memorandum").  More specifically, Defendant alleges that it discovered in June 2013 that Plaintiff appeared before then-Judge Peter Corning at least twice in late 2004 despite their involvement in a romantic relationship.  See Mot. Am. Mem. at 1-2.  Defendant contends that this was a terminable offense, and so Plaintiff cannot be reinstated and cannot recover lost wages accruing after the discovery of this evidence.  See id. at 3 (citing McKennon v. Nashville Banner Publishing Co., 513 U.S. 352 (1995)); Dkt. No. 40-8 ("Westphal Affidavit").  Plaintiff filed a Response in opposition.  Dkt. No. 44-3 ("Response to Motion to Amend").

### B. Motion *in Limine*

On or about July 24, 2012, Plaintiff served on Defendant an expert witness report regarding Plaintiff's potential economic losses resulting from her termination.  Dkt. Nos. 41-5 ("Motion *in limine* Memorandum") at 1; 41-2 ("First Report").  The First Report included estimates of Plaintiff's earnings as an Assistant County Attorney had she not been terminated, and her post-termination earning potential based on the mean salary for Syracuse-area private practice attorneys.  First Report

---

[1] The discovery deadline was extended to February 4, 2013 for the limited purpose of allowing Defendant to complete certain third-party discovery.  Dec. 3, 2012 Text Order.

at 5. The First Report used a single long-term growth rate of 2.82% to estimate future increases in Assistant County Attorney and private practice salaries. Id. at 7, 9.

Plaintiff later served an updated version of the Report dated October 29, 2013. Mot. *in limine* Mem. at 4; Second Report. Whereas the First Report used the *mean* salary of Syracuse-area private practice attorneys to estimate Plaintiff's post-termination earnings potential, the Second Report used the *median*. Compare First Report at 9 with Second Report at 9. The Second Report used two different long-term growth rates to estimate projected increases in Plaintiff's post-termination earnings potential and the Assistant County Attorney salary, respectively. Second Report at 7, 9.

On March 31, 2014, Defendant filed its Motion *in limine* seeking to strike the Second Report. Mot. *in limine*. Plaintiff responded by submitting a Third Report that seeks to remedy the objections raised by Plaintiff's Motion *in limine*. Dkt. Nos. 43-4 ("Response to Motion *in limine*"); 43-3 ("Third Report").

### III. MOTION TO AMEND

**A. Legal Standard**

Pursuant to Federal Rule of Civil Procedure 15(a)(1), a party may, within certain defined time periods, amend a pleading as a matter of course. If amendment as a matter of course is not permitted, a pleading may be amended only if the opposing party consents in writing or the court grants leave. See FED. R. CIV. P. 15(a)(2). Generally, a court "should freely give leave when justice so requires." Id. Nevertheless, it is appropriate for leave to be denied where the proposed amendment would cause undue delay or prejudice to the opposing party. Foman v. Davis, 371 U.S. 178, 182 (1962); Manson v. Stacescu, 11 F.3d 1127, 1133 (2d Cir. 1993). "A proposed amendment

3

is especially prejudicial when discovery has been completed and a summary judgment motion has been filed." Zubulake v. UBS Warburg LLC, 231 F.R.D. 159, 161 (S.D.N.Y. 2005) (citing Ansam Assocs., Inc. v. Cola Petroleum, Ltd,, 760 F.2d 442, 446 (2d Cir. 1985)).

Furthermore, Federal Rule of Civil Procedure 16(b) requires the issuance of scheduling orders that "must limit the time to . . . amend the pleadings." Such scheduling orders "may be modified only for good cause." FED. R. CIV. P. 16(b). Thus, when a motion to amend is made after a scheduling order's deadline for doing so has expired, "the lenient standard under Rule 15(a) . . . must be balanced against . . . Rule 16(b)." Grochowski v. Phoenix Constr., 318 F.3d 80, 87 (2d Cir. 2003). There is good cause for permitting modification of pleading-amendment deadlines where the party moving for modification has been diligent in doing so. Id. "Moreover, while the absence of prejudice to a non-moving party may be relevant in determining whether leave to amend should be granted under Rule 15(a), it does not fulfill the 'good cause' requirement of Rule 16(b)." Carnrite v. Granada Hosp. Group, Inc., 175 F.R.D. 439, 446 (W.D.N.Y. 1997) (quotation marks omitted).

**B. Discussion**

*1. Good Cause*

Defendant argues that there is good cause to allow late amendment of its Answer because it did not have knowledge of the relevant facts until January 2013. Mot. Am. Mem. at 4-5. Defendant asserts that it did not know when Plaintiff and Corning's romantic relationship began until it deposed Corning in August 2012. Id. at 4. Therefore, Defendant argues, it could not begin to search for evidence of Plaintiff's misconduct until after August 2012. Id. Defendant further argues that, due to the "complex process" of searching family court case transcripts, it took several months to discover evidence that Plaintiff continued to appear before Corning after their romantic

relationship began. Id. at 5.

Defendant has not adequately explained why it did not obtain the after-acquired evidence earlier than it did. Although Defendant states that it could not begin searching for evidence of the alleged misconduct until after Corning's deposition in August 2012, County Attorney Frederick Westphal states that he was aware of Plaintiff and Corning's relationship *before* Corning's deposition. See Westphal Aff. ¶ 3. Defendant has therefore implicitly acknowledged that it could have begun searching for evidence of the alleged misconduct before Corning's deposition.[2] Additionally, even after Corning's deposition, Defendant did not "immediately" begin searching for the evidence of misconduct; by its own admission, it only got around to the task "eventually." Mot. Am. Mem. at 5. Once begun, the search for evidence was, according to Defendant, a "complex process" because the records were located at Cayuga County Family Court, not at the County Attorney's office, and because the records were not organized by attorney name, necessitating a search of case transcripts. Id. ¶ 4. These records were apparently available for Defendant's review all along, and the fact that they were not conveniently organized does not justify Defendant's failure to successfully review them until January 2013. See Parker v. Columbia Pictures Indus., 204 F.3d 326, 341 (2d Cir. 2000) (finding lack of good cause where movant had all necessary information supporting amendment prior to bringing suit); Sosa v. Airprint Sys., 133 F.3d 1417, 1419 (11th Cir.

---

[2] Defendant argues that it needed to know the "precise" date that the relationship began before it could begin searching for evidence of Plaintiff's alleged misconduct. Mot. Am. Mem. at 4. Given that Plaintiff's employment with Defendant began in July 2004, Westphal Aff. ¶ 2, and that Corning was a judge until 2006, Dkt. No. 40-1 ¶ 8, Defendant knew the time period during which the misconduct would have occurred before it deposed Corning. Therefore, knowing that the relationship commenced in November 2004 did not make the search for evidence significantly less burdensome than it would have been before Defendant learned of this precise date in Corning's deposition.

5

1998) (finding no good cause where information supporting amendment was publicly available). Accordingly, Defendant's explanation of its search does not demonstrate the level of diligence necessary to allow such a late amendment to its Answer.

Furthermore, even assuming that Defendant could not begin searching for evidence regarding Plaintiff's appearances before Corning until after Corning's deposition in August 2012, Defendant does not explain why it waited until now to move to amend its Answer. Defendant should have moved to raise the defense in late 2012, by which time it clearly suspected Plaintiff had committed misconduct justifying termination, or by January 2013 at the latest, when it claims it obtained the evidence supporting the defense.

Defendant argues that the roughly eighteen-month delay in filing its Motion to Amend is excusable because it reasonably believed that it did not need to plead the after-acquired evidence defense in an answer. Mot. Am. Mem. at 6-7. Defendant's mistake was not reasonable and does not demonstrate good cause for the delay. Federal Rule of Civil Procedure 8(c) states that "[i]n responding to a pleading, a party must affirmatively state any avoidance or affirmative defense." FED. R. CIV. P. 8(c)(1). Failure to do so results in waiver of the defense and its exclusion from the case. Travellers Int'l, A.G. v. Trans World Airlines, Inc., 41 F.3d 1570, 1580 (2d Cir. 1994); Satchell v. Dilworth, 745 F.2d 781, 784 (2d Cir. 1984). "[A] fair majority of courts in the Second Circuit consider after-acquired evidence to be an affirmative defense." Zhou v. State Univ. of N.Y. Inst. of Tech., No. 08-CV-0444, 2013 WL 2237842, at *3 (N.D.N.Y. May 21, 2013) (collecting cases). Defendant's mistaken understanding of the law does not provide good cause for granting its

late-filed Motion to Amend.[3]

   2. *Prejudice*

Although a finding of prejudice to the non-movant is unnecessary for denial of a late-filed motion to amend, the Court notes that granting Defendant's Motion to Amend would cause significant prejudice to Plaintiff. Plaintiff has not had an opportunity to conduct discovery related to the after-acquired evidence, see Resp. to Mot. Am. at 7-8, and reopening discovery would almost certainly require delaying the trial scheduled for June. As stated *supra*, Defendant has not shown good cause for delaying the filing of its Motion to Amend until the eve of trial. Defendant's Motion to Amend is therefore denied.[4]

---

[3] To the extent that Defendant argues that its position is actually sound and the contrary case law should be disregarded, see Mot. Am. Mem. at 6-7, Defendant is incorrect. Defendant relies on Saks v. Franklin Covey Co., which defined an affirmative defense as "[a] defendant's assertion raising new facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim, even if all allegations in the complaint are true." 316 F.3d 337, 350 (2d Cir. 2003), cited in Mot. Am. Mem. at 6. Because the after-acquired evidence defense only limits damages and does not defeat the underlying claim of discrimination or retaliation, Defendant argues that it is not an affirmative defense under Saks. Mot. Am. Mem at 6-7. However, the Second Circuit has more recently stated that "when a defendant seeks to raise a point about something that 'is not an element which the plaintiff must establish to make out a prima facie showing of liability,' he must plead it as an affirmative defense." Estate of Hamilton v. City of New York, 627 F.3d 50, 57 (2d Cir. 2010) (quoting U.S. ex rel. Maritime Admin. v. Cont'l Ill. Nat'l Bank & Trust Co., 889 F.2d 1248, 1253 (2d Cir. 1989)). Under this definition, the after-acquired evidence defense is an affirmative one that must be plead in an answer. See McKennon, 513 U.S. at 360-61 (distinguishing after-acquired evidence's bearing on remedy from the question of whether employer acted unlawfully); Vichare v. AMBAC Inc., 106 F.3d 457, 468 (2d Cir. 1996) (stating that after-acquired evidence may limit remedy but does not defeat underlying cause of action).

[4] Plaintiff also argues that Defendant's proposed amendment is futile because Defendant has not identified any specific law, regulation, or internal policy supporting its assertion that Plaintiff's appearances before a judge with whom she maintained a romantic relationship constituted misconduct for which she would have been terminated. Resp. to Mot. Am. at 8-10. Because the Motion to Amend is untimely, the Court declines to address the futility argument.

## IV. MOTION *IN LIMINE*

Federal Rule of Civil Procedure 26 requires a party to file a report for each expert witness it may use at trial. FED. R. CIV. P. 26(a)(2)(A)-(B). This disclosure must be made in accordance with the deadlines set by the court. FED. R. CIV. P. 26(a)(2)(D). Parties are obligated to supplement or correct any incomplete or incorrect disclosure, and must do so by the pretrial disclosure deadline. FED. R. CIV. P. 26(a)(2)(E), (e).

Defendant contends that the changes in the Second Report are not proper supplements or corrections to the First Report, and that the Second Report therefore constitutes a separate expert witness report that should have been disclosed by the expert disclosure deadline of September 24, 2012. Mot. *in limine* Mem. at 9-14. Defendant primarily argues that the use of median rather than mean salary constitutes a change in methodology that McCabe did not adequately explain.[5]

---

[5] Defendant also asserts that Plaintiff submitted the Second Report to counter an argument that Defendant raised at McCabe's deposition. Mot. Am. Mem. at 3-5, 11. According to Defendant, if the growth rates in the First Report were used to estimate salary increases several years into the future, then Plaintiff's salary as a private practice attorney would eventually surpass her anticipated salary as an Assistant County Attorney and would, over time, compensate for any losses Plaintiff suffered after her termination. Id. In other words, Defendant argues that the First Report indicates that Plaintiff's termination actually made her better off in the long-run. Id.

Defendant cites no authority for the proposition that speculative future increases in earnings must offset back pay. Indeed, there is no such authority. The FMLA provides for damages equal to the amount of "any wages, salary, employment benefits, or other compensation denied or lost," plus an amount equal to lost compensation as liquidated damages, and "such equitable relief as may be appropriate, including employment, reinstatement, and promotion." 29 U.S.C. § 2617(a)(1)(A)-(B). An award of lost wages resulting from wrongful discharge spans from the date of discharge to the date of judgment. See Claudio v. Mattituck-Cutchogue Union Free Sch. Dist., 955 F. Supp. 2d 118, 160-61 (E.D.N.Y. 2013); Press v. Concord Mortg. Corp., No. 08 Civ. 9496, 2010 WL 3199684, at *5 (S.D.N.Y. Aug. 11, 2010). A court may also award front pay—i.e., lost compensation during the period between judgment and reinstatement or in lieu of reinstatement where reinstatement is impossible or impractical and the plaintiff does not have a reasonable prospect of obtaining comparable employment. See Pollard v. E.I. du Pont de Nemours & Co., 532 U.S. 843, 846 (2001); Whittlesey v. Union Carbide Corp., 742 F.2d 724, 728 (2d Cir. 1984); Press, 2010 WL 3199684, at *5. Back pay (pre-judgment lost wages) and front pay (the monetary equivalent of post-judgment

The Third Report reverts back to using the mean salary for Syracuse-area private practice attorneys, Third Report at 9, and McCabe has explained that the updates to the salary growth rates are based on newly available data, Dkt. No. 43-2 ¶¶ 3-5. Because Plaintiff has updated the Report to assuage Defendant's concerns, and because the Third Report constitutes a proper supplement to the First Report, Defendant's Motion *in limine* is moot and is therefore denied.

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendant's Motion (Dkt. No. 40) for leave to file an amended answer is **DENIED**; and it is further

**ORDERED**, that the after-acquired evidence defense is **WAIVED**; and it is further

**ORDERED**, that Defendant's Motion (Dkt No. 41) *in limine* is **DENIED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED: May 08, 2014
Albany, NY

_____
Lawrence E. Kahn
U.S. District Judge

---

reinstatement) therefore compensate for different periods of harm. Although an estimate of Plaintiff's future earnings might be relevant to her prospects of obtaining comparable employment, and therefore relevant to a front pay award, it is irrelevant to the calculation of back pay.

9